**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | | |
|---|---|---|
| **LEILANI DURDEN, et al.,** | ) | |
| | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 5:24-CV-256 (MTT)** |
| | ) | |
| **AUTO-OWNERS INSURANCE** | ) | |
| **COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## <u>ORDER</u>

Defendant Auto-Owners Insurance Company moves for summary judgment on the claims of Plaintiffs Leilani Durden and Michael Durden. ECF 26. For the following reasons, Auto-Owners' motion (ECF 26) is **GRANTED in part** and **DENIED in part**.

### I. BACKGROUND[1]

Auto-Owners issued a policy of insurance to the Durdens covering their property in Milledgeville, Georgia, for the period of June 30, 2021, to June 30, 2022. ECF 10-2 at 3; ECF 26-1 ¶¶ 1–3; 30-1 ¶¶ 1–3. The policy provides: "Suit [against Auto-Owners] must be brought within two years after the loss or damage occurs" (the "Suit Against Us" provision). ECF 10-2 at 42. On June 17, 2022, a storm reportedly damaged the Durdens' property. ECF 26-1 ¶ 1; 30-1 ¶ 1. The Durdens filed a claim with Auto-Owners on June 21, 2022, alleging wind and hail damage, specifically: damage to the garage doors, debris in the yard, fallen trees, damage to the boathouse shingles, damage to the

---

[1] Unless otherwise stated, these facts are undisputed and are viewed in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

gutter guards, isolated areas of broken and gouged siding on three sides, damaged ceiling fans, damaged lights, damaged windows, and damage to patio furniture. ECF 26-1 ¶¶ 15, 16; 30-1 ¶¶ 15, 16.

Auto-Owners retained Hancock Claims Consultants, who sent a representative to inspect the Durdens' roof on June 26, 2022. ECF 26-1 ¶ 28; 30-1 ¶ 28. Auto-Owners' representative, Matt Gilmore, also inspected the property on June 26, 2022. ECF 26-1 ¶ 29; 30-1 ¶ 29. Auto-Owners issued $1,596.09 to the Durdens for replacement costs and $37,132.74 for the actual cash value of damage to the house and other structures. ECF 26-1 ¶¶ 30, 31; 30-1 ¶¶ 30, 31.

On February 28, 2023, Mr. Gilmore emailed Mr. Durden[2]:

> I had a reminder set to circle back up today to check in on the status of repairs to your property. Please bear in mind that there is currently outstanding recoverable depreciation for repairs on the above claim.
>
> Once these items have been completed please have your contractor of choice submit (1) an itemized final invoice and (2) completion photographs showing the completed repairs. This will allow me to review the file to determine the amount owed to finalize your claim.

ECF 27-2 at 283. Mr. Durden responded on March 12, 2023:

> I have just gotten the contractor to come by for a estimate. We are currently looking to find a siding that my wife is happy with and then we are starting on the windows. Am I running out of time? Everyone I spoke with has been back up with work is what is taking so long.

*Id.* at 281. Mr. Gilmore responded later that day, "You have two year[s] from the date of loss to complete the repairs. After two years, you forfeit the opportunity for recoverable depreciation." *Id.*; ECF 26-1 ¶ 33; 30-1 ¶ 33.

---

[2] The communications between Mr. Durden and Auto-Owners detailed in this Order are not exhaustive. The record reflects that Mr. Durden and Auto-Owners exchanged communications which neither party contends are relevant to the issues raised in this motion. *See* ECF 27-2.

Mr. Durden testified that when he received Mr. Gilmore's March 12, 2023 response email, he called Mr. Gilmore and told him "we need to do a claim now. . . . [I]f we're running out of time, we're going to go ahead and I'm going to give [Auto-Owners] an estimate on what it's going to cost to fix it." ECF 27-2 at 141:13–17. Mr. Durden testified that Mr. Gilmore responded: "[D]o not worry about that. That is a formality. We're going to work with you because of COVID." *Id.* at 141:17–19. He further testified that Mr. Gilmore told him the two years could be extended. *Id.* at 142:6–11.

Mr. Durden and Mr. Gilmore spoke on more than three occasions about the time to complete repairs to the property. ECF 26-1 ¶ 83; 30-1 ¶ 83. Mr. Durden's sworn declaration states: "Throughout my dealings with Matt Gilmore, he told me that the two year suit limitation would not apply as he understood there were issues with [the] covid supply chain." ECF 13-1 ¶ 5. Mr. Durden also swore in his declaration that "on another occasion Matt Gilmore told me that the two year suit limitation will only start from the denial of the claim by Auto-Owners if there were a denial." *Id.* ¶ 6. However, Mr. Durden testified that on each occasion he and Mr. Gilmore spoke, they "[n]ever talked about filing a suit"[3] and Mr. Gilmore never mentioned the Suit Against Us provision in the policy. ECF 27-2 at 176:8–12, 143:11–144:9; 26-1 ¶ 35; 30-1 ¶ 35. And Ms. Durden similarly testified that during Mr. Durden's and Mr. Gilmore's phone call in March 2023, which she listened to on speakerphone, there was no mention of lawsuits or time

---

[3]     Q: And was there any mention of a suit limitation provision or those timelines?

A.   Never talked about filing a suit. We wasn't even discussing a lawsuit. It was -- we were just repairing the house.

ECF 27-2 at 176:8–12.

limitation in the policy relative to lawsuits "because that wasn't in [their] brain … at that point." ECF 27-3 at 41:11–17; 26-1 ¶ 85; 30-1 ¶ 85; *see* ECF 27-2 at 141:13–21.

On August 25, 2023, Mr. Gilmore sent the Durdens a "Replacement Cost Letter" which stated: "We have previously settled the actual cash value portion of your claim in the amount of $41935.33 after applying your $1000 deductible. At this time, your claim has outstanding recoverable depreciation in the amount of $10752.40." ECF 27-2 at 315; ECF 26-1 ¶ 80; 30-1 ¶ 80. The letter continued: "The purpose of this letter is to notify you that you have until June 17, 2024 to have the replacement cost damages of this loss repaired and/or replaced. . . . The repairs or replacement of the covered property must be effectuated within two years of after the date of loss," citing the policy's "HOW LOSSES ARE SETTLED AMENDATORY" provision. ECF 27-2 at 315–16. In closing, the letter stated: "All rights, terms, conditions and exclusions in your policy are in full force and effect and are completely reserved." *Id.* at 316; ECF 26-1 ¶ 82; 30-1 ¶ 82.

On September 7, 2023, Mr. Durden emailed Oakbridge Insurance Agency[4] about the Replacement Cost Letter. ECF 13-1 at 7–8. He wrote: "We only received 37,132.74 from [Auto-Owners] so far. Not the amount they have on this letter. I still have this money sitting in the account because I am waiting to order all the materials being they are way more than this amount." *Id*. at 8. Oakbridge forwarded the email to Mr. Gilmore, who responded to Mr. Durden assuring him "[t]he Two Year Statute Letter was simply sent as a courtesy and it simply applies to recoverable depreciation per the Policy." *Id.* at 6.

---

[4] It appears the Durdens initially reported their claim to Oakbridge, and Auto-Owners followed up upon receipt of the claim. ECF 26-6 at 1.

Auto-Owners retained Scott Beaudry, a professional and structural engineer with Trinity Engineering, who inspected the property on September 15, 2023, and prepared a report of his findings. ECF 27-2 at 318; 26-1 ¶¶ 36, 37; 30-1 ¶¶ 36, 37. Mr. Beaudry determined there was no storm-related damage to the property. ECF 27-2 at 321; 26-1 ¶¶ 38–41; 30-1 ¶¶ 38–41.

On October 26, 2023, Auto-Owners sent the Durdens a Partial Coverage Position letter, which contained a repair estimate for the covered damages and stated: "Our investigation at this time is complete." ECF 26-6; 26-5; 26-1 ¶ 88; 30-1 ¶ 88. Mr. Durden testified that he understood the letter to mean that Auto-Owners' position was that certain conditions were not covered under the policy. ECF 27-2 at 188:2–7; 26-1 ¶ 89; 30-1 ¶ 89. Mr. Durden testified that upon receiving the October 26, 2023 letter, he became aware that there was a disagreement as to coverage and understood that Auto-Owners was not going to issue additional payment. ECF 27-2 at 189:2–8, 194:7–14; 26-1 ¶ 90; 30-1 ¶ 90. In total, Auto-Owners issued $47,819.89 in indemnity payments to the Durdens. ECF 26-1 ¶ 86; 30-1 ¶ 86.

On January 24, 2024, the Durdens' counsel sent a bad faith demand to Auto-Owners seeking payment of $492,897.90. ECF 26-1 ¶ 91; 30-1 ¶ 91. On February 20, 2024, Auto-Owners sent a letter to the Durdens' counsel rejecting the bad faith demand. ECF 26-1 ¶ 92; 30-1 ¶ 92. Mr. Durden testified that he did not think Auto-Owners was going to issue any further payment after receipt of the February 20, 2024 letter. ECF 27-2 at 203:25–204:2; 26-1 ¶ 93; 30-1 ¶ 93.

The Durdens filed suit on June 20, 2024, seeking $492,897.90 in damages for the windows, doors, roof, siding, gutters, and lights in their home, and for the roof and siding of their boathouse. ECF 1-2 ¶ 31; 26-1 ¶¶ 14, 17; 30-1 ¶¶ 14, 17.

## II. STANDARD

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "When the *moving* party has the burden of proof at trial, that party must show *affirmatively* the absence of a genuine issue of material fact: it 'must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial.' In other words, the moving party must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the nonmoving party." *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1438 (11th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986) (Brennan, J., dissenting)). "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

In contrast, "[w]hen the *nonmoving* party has the burden of proof at trial, the moving party is not required to 'support its motion with affidavits or other similar material *negating* the opponent's claim.'" *Four Parcels of Real Prop.*, 941 F.2d at 1437 (quoting *Celotex Corp.*, 477 U.S. at 323). The moving party "simply may show . . . that there is an absence of evidence to support the nonmoving party's case." *Id.* at 1438 (cleaned up). "Assuming the moving party has met its burden, the non-movant must then show a

-6-

genuine dispute regarding any issue for which it will bear the burden of proof at trial."
*Info. Sys. & Networks Corp. v. City of Atlanta,* 281 F.3d 1220, 1224–25 (11th Cir. 2002)
(citing *Celotex Corp.*, 477 U.S. at 324).[5]

In determining whether a genuine dispute of material fact exists, the Court "must
avoid weighing conflicting evidence or making credibility determinations." *Damon v.
Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999). Instead, "[t]he
evidence of the non-movant is to be believed, and all justifiable inferences are to be
drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A
material fact is any fact relevant or necessary to the outcome of the suit, and a factual
dispute is genuine "if the evidence is such that a reasonable jury could return a verdict
for the nonmoving party." *Id*. at 248. Furthermore, "[a]ll material facts contained in the
movant's statement which are not specifically controverted by specific citation to
particular parts of materials in the record shall be deemed to have been admitted,
unless otherwise inappropriate." M.D. Ga. L.R. 56.

### III. DISCUSSION

#### A. Suit Limitation

The parties agree that the Durdens filed suit two years and three days after the
loss to the property occurred. ECF 26-1 ¶¶ 14, 15; 30-1 ¶¶ 14, 15; 30 at 1–4. Auto-

---

[5] Under Georgia law, the insured has the burden to prove that it suffered a loss covered by the policy, that
it complied with the conditions precedent under the policy, and that the insurer waived its right to raise a
certain defense. *Rsrv. Life Ins. Co. v. Davis*, 224 Ga. 665, 667, 164 S.E.2d 132, 133 (1968); *Wolverine
Ins. Co. v. Sorrough*, 122 Ga. App. 556, 560, 177 S.E.2d 819, 822 (1970); *Metropolitan Life Ins. Co. v.
Smith*, 48 Ga. App. 245, 247, 172 S.E. 654, 656 (1934); *see also* 17A Steven Plitt et. al., *Couch on
Insurance* § 254:11 (3d ed. 2022). However, the insurer bears the burden to prove a policy exclusion,
exception, or other affirmative defense applies. *Rsrv. Life Ins. Co. v. Ayers*, 217 Ga. 206, 213, 121 S.E.2d
649, 654 (1961); *see also* 17A Steven Plitt et. al., *Couch on Insurance* § 254:12 (3d ed. 2022). Thus, the
Durdens have the burden to prove that the policy covers their claims and that Auto-Owners waived the
suit limitation period. Auto-Owners has the burden to prove that any exclusion applies.

Owners argues that the Durdens' claims are time-barred by the two-year suit limitation period in the policy. ECF 26-2 at 15–21. The Durdens counter that Auto-Owners waived the suit limitation period through the representations of Mr. Gilmore. ECF 30 at 1–4.

Georgia recognizes and enforces contractual limitation periods like the two-year limitation in Auto-Owners' policy. *See Thornton v. Ga. Farm Bureau Mut. Ins. Co.*, 287 Ga. 379, 380, 695 S.E.2d 642, 643 (2010). But "where the application of a contractual limitation would work a forfeiture of the policy benefit, 'the court will strictly construe the provision against the insurance company and small circumstances will be sufficient to show a waiver by the company.'" *Gilbert v. Southern Trust Ins. Co.*, 252 Ga. App. 109, 111–12, 555 S.E.2d 69, 72 (2001) (quoting *Decatur Fed. Sav. & Loan Assn. v. York Ins. Co.*, 147 Ga. App. 797, 798, 250 S.E.2d 524, 525–26 (1978)). An insurance company can waive the contractual limitation period where the company "lulled the insured into a belief" that the limitation was waived. *Edwards v. Atlantic Ins. Co.*, 203 Ga. App. 608, 610, 417 S.E.2d 410, 413 (1992) (holding that there may be waiver "[i]f the insurer never denied liability, but continually discussed the loss with its insured with a view toward negotiation and settlement without the intervention of a suit"). However, "[m]ere negotiation for settlement, unsuccessfully accomplished, is not [the] type of conduct . . . to constitute a waiver of the limitation defense." *Stone Mountain Collision Ctr. v. Gen. Cas. Co. of Wis.*, 307 Ga. App. 394, 396, 705 S.E.2d 163, 165 (2010). Where a waiver occurs, it "toll[s] the time for filing the action rather than waiving entirely the contractual requirements as to the time of filing the suit." *Looney v. Ga. Farm Bureau Mut. Ins. Co.*, 141 Ga. App. 266, 267, 233 S.E.2d 248, 249 (1977).

The Court finds that a disputed question of fact exists as to whether Auto-Owners, through Mr. Gilmore, "lulled [the Plaintiffs] into a belief" that the two-year limitation period was waived. According to Mr. Durden, Mr. Gilmore made a series of representations leaving the Durdens with the understanding that the limitation period was waived. Mr. Durden testified Mr. Gilmore told him "[t]hat two years we have the option to extend it" and "that [Auto-Owners] w[as] going to work with me and that date did not matter." ECF 27-2 at 142:10–21. Mr. Durden also testified that when he called Mr. Gilmore to ask if he was "running out of time" to do a claim, Mr. Gilmore responded: "[D]o not worry about that. That is a formality. We're going to work with you because of COVID." *Id.* at 141:13–19. A jury could find there was an affirmative promise by Auto-Owners leading the Durdens to believe the limitation period would be extended.[6]

Auto-Owners argues that Mr. Durden testified that he and Mr. Gilmore "[n]ever talked about filing a suit" and Mr. Gilmore never mentioned the Suit Against Us provision in the policy to him. ECF 26-2 at 19; 27-2 at 176:8–12, 143:11–144:9. But Auto-Owners does not attempt to reconcile this testimony with Mr. Durden's conflicting testimony regarding Mr. Gilmore's affirmative promise(s) described above, Mr. Durden's sworn declaration, or Mr. Gilmore's representations in writing.[7] *See* ECF 26-2 at 15–21. Mr. Durden swore that "[t]hroughout [his] dealings with Matt Gilmore, [Mr. Gilmore] told

---

[6] "'[T]o conclude that the policy limitations have been waived or estopped, there must be an affirmative promise or other act waiving the limitation[,] or an actual or constructive fraud leading the insured to believe the limitation [period] would be enlarged." *Stapleton v. Gen. Acc. Ins. Co.*, 236 Ga. App. 835, 837, 512 S.E.2d 645, 647–48 (1999) (quoting *Bowers v. Safeco Ins. Co. of America*, 187 Ga. App. 229, 230, 369 S.E.2d 547, 548) (alterations in original) (1988).

[7] In its reply brief, Auto-Owners suggests that Mr. Gilmore's representations waived the time to seek replacement cost benefits rather than the time to file suit, citing *Yarbrough v. Shelby Ins. Co.*, 991 F. Supp. 1476, 1480 (M.D. Ga. 1998). ECF 32 at 4. In *Yarbrough*, "the plaintiff was not told anything at all about the time limit for filing a lawsuit, and there [was] nothing in the record to call into question the one year limit contained in the policy." 991 F. Supp. at 1479. Here, the record is not so clear.

[Mr. Durden] that the two year suit limitation would not apply as he understood there were issues with the covid supply chain." ECF 13-1 ¶ 5. Mr. Durden swore that on another occasion, Mr. Gilmore told him, "the two year suit limitation will only start from the denial of the claim by Auto-Owners if there were a denial." *Id.* ¶ 6. And on September 8, 2023, Mr. Gilmore responded in writing to Mr. Durden's email: "[t]he Two Year Statute Letter was simply sent as a courtesy and it simply applies to recoverable depreciation per the Policy." ECF 13-1 at 6. There is a dispute of fact as to whether Auto-Owners, through Mr. Gilmore, lulled the Durdens into a belief that the two-year limitation period was waived.

However, the Court agrees with Auto-Owners that the Durdens understood, upon receiving the Partial Coverage Position letter issued on October 26, 2023, and certainly upon receiving Auto-Owners' February 20, 2024 rejection of their bad faith demand, that no additional payment was forthcoming. *See* ECF 26-2 at 19–20. Mr. Durden testified that his interpretation of the Partial Coverage Position letter was that Auto-Owners disputed coverage and was not going to issue additional payment. ECF 27-2 at 189:2–8, 194:7–14. He likewise testified that upon receiving Auto-Owners' February 20, 2024 letter rejecting the Durdens' bad faith demand, he understood that no additional payment was forthcoming. *Id.* at 203:25–204:2. Thus, the Durdens were "well aware that [Auto-Owners] did not intend to fully pay the amounts [they] claimed to be due" by that point. *Premier Eye Care Assocs., P.C. v. Mag Mut. Ins. Co.*, 355 Ga. App. 620, 626, 844 S.E.2d 282, 288 (2020).

"[T]he effect of a waiver is to toll the one-year time bar until negotiations on the claim end and the insurance company makes a final decision on the claim." *TransWorld*

*Food Serv. v. Nationwide Mut. Ins. Co.,* 2025 U.S. App. LEXIS 21762, at \*12 (11th Cir. Aug. 26, 2025) (citing *Looney,* 141 Ga. App. at 267, 233 S.E.2d at 249)*.* The earliest arguable date of Auto-Owners' final decision on the Durdens' claim is October 26, 2023, when it issued the Partial Coverage Position letter. If a jury finds that Auto-Owners waived the limitation period until October 26, 2023, the Durdens had two years from that date to sue. *See Transworld,* 2025 U.S. App. LEXIS at \*10–11 ("The tolling ceased upon the denial of liability and, from then on, the limitations period began to run.") (citation modified). The Durdens filed suit on June 20, 2024, and thus, a jury could find they were well within the limitation period as tolled.

Accordingly, Auto-Owners' motion for summary judgment based on the suit limitation clause is **DENIED**.

### B. Damages[8]

The policy provides that Auto-Owners will pay "the smallest of 1) the limit of insurance applying to the damaged covered property; 2) the cost to replace the damaged covered property with equivalent construction for equivalent use at the residence premises; or 3) the amount actually spent to repair or replace the damaged covered property." ECF 10-2 at 22. The Durdens claim that Auto-Owners failed to fully compensate them for damage to their home and other structures of their property. ECF 1-2 ¶ 2. Auto-Owners argues that the Durdens have "failed to prove their damages" because they did not retain any contractors and the Durdens themselves are unqualified

---

[8] Auto-Owners' brief in support of its motion for summary judgment exceeded Local Rule 7.4's page limitation. *See* ECF 26-2; M.D. Ga. L. R. 7.4. Auto-Owners explained in its reply brief that it intended to file a 20-page brief in 12-point Times New Roman font but mistakenly filed it in 14-point Times New Roman font. ECF 32 at 8–10. The Durdens responded to every argument "out of an abundance of caution" and thus suffered no prejudice because of Auto-Owners' mistake. *See* ECF 30 at 4 n.1, 6 n.2. The Court **GRANTS** Auto-Owners' request that the Court consider its original 20-page brief *nunc pro tunc.*

to determine their damages. ECF 26-2 at 21–26. Per the terms of the policy, Auto-Owners challenges the Durdens' abilities to testify and present evidence of the cost to replace the damaged covered property with equivalent construction for equivalent use. Specifically, Auto-Owners argues the Durdens "have failed to provide any evidence that they are entitled to recover the amounts sought as necessary to repair or replace the covered damaged property with equivalent construction for equivalent use." *Id.* at 25–26.

An insured suing for damages on a breach of contract theory "bears the burden of proving its damages by evidence which furnishes the jury with sufficient data to enable them to calculate the amount with reasonable certainty. Proof of damages cannot be left to speculation, conjecture and guesswork." *American Infoage, LLC v. Only Solution Software*, 362 Ga. App. 706, 710, 870 S.E.2d 47, 51 (2022) (citation modified). In *Finneran v. Allstate,* 2022 U.S. Dist. LEXIS 46226, at *9, 2022 WL 776348, at *3 (N.D. Ga. Feb. 2, 2022), as here, the insurance company argued that the insureds could not establish a prima facie claim for breach of contract because they failed to identify an expert to testify on the scope of the damage from the loss, causation, and the cost of the repairs. *Id.* While the district court acknowledged that the Eleventh Circuit allows a plaintiff to satisfy its burden of proof as to causation with circumstantial lay testimony, the court concluded that the insureds' affidavits containing "only conclusory statements that the [loss] damaged Plaintiffs' personal property and the [loss] caused the need to replace [certain property]" were insufficient evidence of damages, especially where the insurance company's expert had determined that the loss did not cause the damage claimed. *Id.* at *11–13. The same is true here.

Here, the Durdens have not offered opinions or cited record evidence of the scope of damage to their property and the replacement costs covered under the policy. *See* ECF 30 at 4–6. More fundamentally, the Durdens don't even mention the policy's relevant loss payment provision, i.e., the measure of damages. The Durdens point to Mr. Durden's testimony that Anderson Doors, the door manufacturer, told Mr. Durden that "[w]hen the doors are bent, they [have] to take the entire door out and replace the frames." *Id.* at 5; *see* ECF 27-2 at 138:2–4. Accordingly, the Durdens maintain that "a full repair would require new framing and replacement windows and doors." ECF 30 at 5. The Durdens also point to Mr. Durden's testimony that he has "an invoice for windows that is $238,954 and for siding that is 73,320." *Id.* at 6; *see* ECF 27-2 at 201:3–6, 149:18–150:1.[9] But they provide no admissible evidence to support that, and even if they had, they do not say how that "evidence" satisfies policy requirements. In other words, they offer no admissible evidence of "the cost to replace the damaged covered property with equivalent construction for equivalent use."

The Durdens rely on Federal Rule of Evidence 701 for the general principle that lay witnesses "are allowed to offer opinions on the value of the damages to their home." ECF 30 at 5. They further note that "Geogia courts allow lay opinions on the value of damage to property." *Id.* at 6. The question here, however, is whether the Durdens have admissible evidence of "the cost to replace the damaged covered property with equivalent construction for equivalent use" per the terms of the policy. *See id.* at 4–6. They don't claim to have such evidence, and they only vaguely assert they "have

---

[9] It is undisputed that the Durdens "did not retain anyone to visit the [p]roperty to evaluate or determine the cause of the conditions observed by [the Durdens] after the storm event." ECF 26-1 ¶ 94; 30-1 ¶ 94. The Durdens repeatedly maintain this was because they "knew the storm damage themselves." *See, e.g.,* ECF 30-1 ¶ 94.

knowledge of their damages and are competent to testify regarding them." *Id.* at 6. This is wholly insufficient. Again, the Durdens have failed to provide opinions establishing or evidence of the cost to replace the damaged covered property with equivalent construction for equivalent use. They don't even try.

Accordingly, Auto-Owners' motion for summary judgment on damages is **GRANTED** to that extent. Whether the Durdens have evidence of damages that fall within the scope of any other loss payment provision of the policy is not before the Court.

## C. Bad Faith

Auto-Owners argues that it is entitled to summary judgment on the Durdens' claims for bad faith and extracontractual damages pursuant to O.C.G.A. § 33-4-6[10] because Auto-Owners relied on the opinions of independent engineers and specialists in determining the cause of damage, the extent of damage, and the amount owed for the covered damages. ECF 26-2 at 26. In Georgia, "penalties against an insurer for bad faith denial of a claim under O.C.G.A. § 33-4-6 are not authorized where the insurance company has any reasonable ground to contest the claim and where there is a disputed question of fact on the question of liability under the policy." *Montgomery v. Travelers Home & Marine Ins. Co.*, 360 Ga. App. 587, 591, 859 S.E.2d 130, 135 (2021) (citation modified). "As a matter of law, it is reasonable for an insurer to deny a claim based on [] advice [from an independent consultant] unless the advice is patently wrong and the error was timely brought to the insurer's attention or unless the advice is in the nature of

---

[10] "To prevail on a claim for an insurer's bad faith under O.C.G.A. § 33-4-6, the insured must prove: (1) that the claim is covered under the policy, (2) that a demand for payment was made against the insurer within 60 days prior to filing suit, and (3) that the insurer's failure to pay was motivated by bad faith." *BayRock Mortg. Corp. v. Chicago Title Ins. Co.*, 286 Ga. App. 18, 19, 648 S.E.2d 433, 435 (2007).

-14-

mere pretext for an insurer's unwarranted prior decision to deny the claim." *Id*. at 592 (citation modified).

The Durdens argue that the "gross disparity" between the scope of damage claimed by the Durdens and Auto-Owners "can only be due to one thing—Defendant's unwillingness to fairly pay claims." ECF 30 at 7. This assertion is entirely unsupported. Auto-Owners relied on reports from Hancock Claims Consultants and Trinity Engineering in contesting the Durdens' claim. ECF 26-3; 26-4. The Durdens have failed to point to any evidence that the advice Auto-Owners received from its independent consultants was patently wrong or that the advice was a mere pretext for the unwarranted denial of their claim. Nor have the Durdens offered admissible evidence of their damages and thus there is no evidence of "gross disparity" for the Court to consider. Finally, the Court's rulings on the suit limitation clause and the scope of damages that may be recovered demonstrate that Auto-Owners has not acted in bad faith.

Accordingly, Auto-Owners' motion for summary judgment on the Durdens' claims for bad faith and extracontractual damages pursuant to O.C.G.A. § 33-4-6 is **GRANTED**.

### IV. CONCLUSION

For the foregoing reasons, Auto-Owners' motion for summary judgment (ECF 26) is **GRANTED in part** and **DENIED in part**. The parties shall advise the Court by **May 13, 2026** of any remaining issues.

**SO ORDERED**, this 29th day of April, 2026.

<u>S/ Marc T. Treadwell</u>
MARC T. TREADWELL, JUDGE

-16-

UNITED STATES DISTRICT COURT